MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

AARON D. WEGNER (CABN 243809)
Assistant United States Attorney

    450 Golden Gate Avenue
    San Francisco, California
    Telephone: (415) 436-6831
    Facsimile: (415) 436-6982
    E-Mail: aaron.wegner@usdoj.gov

Attorneys for United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-10-00834-WHA |
|     Plaintiff, | )<br>)<br>) | GOVERNMENT'S SENTENCING MEMORANDUM AND RESPONSE TO PRESENTENCE REPORT |
| v. | ) | |
| ALEJANDRO GONZALEZ, | )<br>) | Date: July 19, 2011 |
|     Defendant. | ) | Time: 2:00 p.m. |

**INTRODUCTION**

On May 4, 2011, after a stipulated facts bench trial, the Court found the defendant guilty of one count of conspiracy to possess with intent to distribute and to distribute cocaine and two counts of using a communication facility (a telephone) to a commit a felony drug offense. The probation officer has submitted his final report and recommended a sentence of 70 months imprisonment. As explained in more detail below, the government disagrees with the probation officer's final Guidelines calculation and sentencing recommendation. The government believes that the appropriate sentence in this case is 78 months of imprisonment, followed by 3 years of supervised release, no fine, and a $300 special assessment.

//

**BACKGROUND**

**A.    Facts**

At the direction of agents from the Drug Enforcement Administration ("DEA"), a confidential informant ("CI") placed multiple recorded telephone calls to the defendant. During these telephone calls, the CI negotiated the purchase of five kilograms of cocaine from the defendant for $85,000.

On October 29, 2010, the CI placed a recorded telephone call to the defendant in the presence of agents. The conversation detailed a plan for the defendant and the CI to meet at a gas station or restaurant in Kettleman City, California. The CI asked if Gonzalez was going to bring "five" (five kilograms of cocaine) and Gonzalez said "yes, yes." The CI informed the defendant that he/she would bring $85,000, and the call was subsequently concluded.

On November 1, 2010, the CI called the defendant and informed him that the prior arrangements for Kettleman City would not work. According to the CI, the defendant stated that "the guy" did not want to conduct a transaction near Interstate 5 because it was very isolated. The CI and the defendant then made arrangements to conduct the cocaine transaction in Modesto, California.

On November 2, 2010, the CI made several telephone calls to the defendant in the presence of an undercover agent. The CI instructed the defendant to meet the CI in the Chili's restaurant parking lot in the Vintage Faire Shopping Center in Modesto, California. That afternoon, the defendant arrived at the Chili's parking lot in a red Acura. Agents observed the defendant exit from the passenger side of the red Acura and greet the CI. The CI then introduced an undercover DEA agent to the defendant. The driver of the red Acura, subsequently identified as Roberto Aguilar, remained in the driver's seat of the vehicle. Agents then observed the defendant open the trunk of the red Acura and remove a seemingly new electronics box and place it inside the undercover agent's vehicle. The undercover agent opened the box and observed a speaker. The undercover agent opened the speaker and observed five bricks of cocaine. The undercover agent then cut into one of the bricks and pretended to test the cocaine. Shortly thereafter, agents arrested the defendant and Aguilar without incident.

**B.     Gonzalez's Offense Conduct**

On May 4, 2011, after a stipulated facts bench trial, the Court found the defendant guilty of Count One of the Indictment charging him with conspiracy to distribute and possess with the intent to distribute cocaine. The Court also found the defendant guilty of Counts 2 and 3 of the Indictment charging him with using a telephone to commit a felony drug offense. During the trial, the defendant admitted that he was responsible for five kilograms of cocaine.

**C.     Gonzalez's Criminal History**

As the probation officer notes, the defendant has no criminal convictions and is safety valve eligible.

## DISCUSSION

**A.     Applicable Law**

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct guidelines range. *Id.* Although the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *United States v. Rita*, 551 U.S. 338, 350 (2007).

The guidelines range will be the starting point and initial benchmark for the sentence. *Carty*, 520 F.3d at 991. The Court should keep the guidelines range in mind throughout the process, let the parties argue for a sentence they believe is appropriate, and consider the factors identified in § 3553(a). *Id.* If the Court imposes a sentence outside the guidelines range, it must consider the extent of the deviation and ensure that its justification for deviating from the range is sufficiently compelling to support the degree of variance in the sentence that it imposes. *Id.*

**B.     Calculation of Guidelines**

In the Guidelines calculation contained in final Presentence Report ("PSR"), the probation officer applied a three-level downward adjustment for acceptance of responsibility and a two-level downward adjustment for safety-valve pursuant to § 5C1.2. Based on these adjustments, the probation officer ultimately concluded that the defendant's adjusted offense

level is 27. The government objects to this calculation because while the defendant is entitled to a two-level adjustment for acceptance of responsibility, the defendant is not entitled to a third point for acceptance of responsibility under the distinct standard set forth in U.S.S.G. § 3E1.1(b). To qualify for this third point, the defendant must have "assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." § 3E1.1(b). Since the PROTECT Act, this adjustment is available only upon motion of the government, and no such motion has made in this case. *Id.*; PROTECT Act, Pub. L. No. 108-21, § 401(g), 117 Stat. 650, 671–72 (2003).

Indeed, the Ninth Circuit has expressly ruled that a defendant is not eligible for such an adjustment where, as here, he or she chooses to proceed by way of a stipulated facts bench trial:

> By proceeding to trial, [the defendant] did not allow the government to avoid spending resources on preparing trial. Even if we were to equate a stipulated facts bench trial with an outright guilty plea, the government would still not have been compelled to file the motion. There are rational reasons for the government to prefer an outright guilty plea to a stipulated facts bench trial. In particular, as the government urges, a plea of guilty allows the government to avoid expending resources anticipating, and ultimately defending, a complete appeal.

*United States v. Espinoza-Cano*, 456 F.3d 1126, 1138 (9th Cir. 2006) (internal citations and quotation marks omitted). "A defendant can show contrition for his conduct while making a legal challenge at trial. A defendant cannot, however, timely notify the Government of an intent to plead guilty, thus permitting the Government to avoid trial preparation and, at the same time, proceed to trial." *United States v. Villasenor-Cesar*, 114 F.3d 970, 974 (9th Cir. 1997) (denying a § 3E1.1(b) adjustment when a defendant proceeded by way of a stipulated facts bench trial).

Here, the defendant was simply unwilling to plead guilty because of an alleged jurisdictional deficiency in the charging document. The defendant filed a motion to dismiss the Indictment on jurisdictional grounds and it was properly denied by the Court. Dkt. 20; Dkt. 24. By virtue of the defendant's election to proceed to trial, the government was required to perform work and effort pertaining to the trial itself, even if it was minimal as compared to a full-scale

jury trial. In addition, the defendant will certainly appeal the Court's ruling that the government had jurisdiction to charge him for the crimes in the Indictment. This position is simply inconsistent with the full acceptance of responsibility contemplated by U.S.S.G. § 3E1.1. *See, e.g., United States v. Sotelo*, 109 F.3d 1446, 1449 (9th Cir. 1997) (holding that a defendant charged with illegal reentry who contested the sufficiency of the prosecution's proof was not entitled to a reduction for acceptance of responsibility).

To be clear, requesting a trial was certainly the defendant's right. But both the Guidelines and the Ninth Circuit have recognized the additional government and court burdens that decision entails. Accordingly, the defendant should not be able to proceed to trial, while at the same time receiving an adjustment for avoiding the institutional burdens necessitated by that trial. Thus, after a two-level reduction for safety-valve pursuant to § 5C1.2 and a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, the defendant's adjusted offense level is 28. As he has no criminal history points, the defendant's Guidelines range is 78-97 months.

**C. Variance is Not Warranted**

While the defendant will likely argue for a downward variance in this case, a sentence outside of the guidelines is not appropriate. As an initial matter, the Court should consider the large amount of drugs involved in this case. As evidenced by the terms of the deal, the five pounds of cocaine was worth $85,000 at the high-level distribution point, and would certainly be worth more at a street level distribution point. There is no question that the amount of drugs involved here, and their value, is substantial.

Moreover, the defendant was involved in every stage of the narcotics transaction. He initially brokered the deal with the CI and agreed to transport the cocaine to the meeting point in Modesto. The defendant also showed the cocaine to the CI and was presumedly involved in the complex packaging of the cocaine inside of the stereo speaker. In addition, as noted in the PSR, the defendant has participated in several past cocaine transactions with the defendant involving large amounts of drugs and money. PSR at ¶5. In short, the evidence in this case demonstrates that the defendant is a savy veteran of the drug trade. Accordingly, the government believes that a sentence at the low-end of the guidelines, 78 months, adequately accomplishes the goal of

providing sufficient and just punishment such that the defendant will not likely engage in this type of activity in the future.

## **CONCLUSION**

The government respectfully requests that the Court sentence the defendant to 78 months of imprisonment, followed by 3 years of supervised release, and a $300 special assessment.

DATED: July 12, 2011						Respectfully submitted,

							MELINDA HAAG
							United States Attorney


							_____/s/_____
							AARON D. WEGNER
							Assistant United States Attorney